IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
LUFKIN DIVISION

| | |
|---|---|
| JEREMY SHOTWELL, <br>     PLAINTIFF, <br><br> v. <br><br> PPM CAPITAL, INC., <br> and EUGENE PALADINO, individually, <br>     DEFENDANTS | Case No. 9:23-cv-142 |

## COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff Jeremy Shotwell ("Plaintiff"), by and through her undersigned counsel, brings this lawsuit against PPM Capital, Inc. ("PPM") and Eugene Paladino ("Paladino") and alleges as follows:

### NATURE OF ACTION

1. This lawsuit is brought pursuant to the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692, et seq., the Texas Finance Code ("TFC") § 392.001, et seq.

2. Defendants are subject to the collection laws of the state of Texas because Plaintiff was located in the state of Texas at all times relevant hereto.

### JURISDICTION AND VENUE

3. This Court has jurisdiction pursuant to 15 U.S.C.§ 1692k(d) and 28 U.S.C. § 1331.

4. Supplemental Jurisdiction exists pursuant to 28 U.S.C. § 1367.

5. Venue is proper before this Court pursuant to 28 U.S.C.§ 1391(b), where the acts and transactions giving rise to Plaintiff's action occurred in this State and this District and where Plaintiff resides in this State and this District.

1

## PARTIES

6. Plaintiff is a natural person, who at all relevant times resided in Trinity County, Texas, and thus is a "person" as that term is defined by California Civil Code § 1788.2(g).

7. PPM Capital, Inc. is a New York business entity with principal offices situated at 561 Main Street, Suite 60, North Tonawanda, NY 14120.

8. PPM may be served in accordance with Texas or New York law.

9. Paladino is a natural person, believed to be residing at 206 E. Hazeltine Ave., Buffalo, NY 14217.

10. Paladino may be served wherever he may be found in accordance with Texas or New York law.

11. Paladino is an owner and principal officer of PPM.

## FACTUAL ALLEGATIONS

12. Plaintiff was allegedly obligated on a personal loan Account (hereinafter referred to as "the Account") which allegedly defaulted with an unpaid balance. The Account was used for personal or family purposes and not business or commercial purposes in any way.

13. The Account originated with an entity other than Defendants and went into default prior to being sold to one or more of the Defendants.

14. Plaintiff is a "consumer" as defined by 15 U.S.C. § 1692a(3) and Tex. Fin. Code § 392.001(1).

15. The Account constitutes a "debt" as that term is defined by 15 U.S.C. § 1692a(5) and constitutes a "consumer debt" as that term is defined by Tex. Fin. Code § 392.001(2).

16. On information and belief, PPM purchased the Account, or otherwise obtained the right to collect it, after the Account went into default with the original creditor.

17. PPM attempted collections directly from Plaintiff in order to make a profit.

18. As will be described below, PPM communicated with Plaintiff for the purpose of collecting a debt from her.

19. The principal purpose of PPM is the purchase of delinquent debts and the collection of those debts, directly or indirectly, using the mails and telephone and other means.

20. PPM regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another that arose out of transactions in which the money, property or services which are the subject of the transactions are primarily for personal, family or household purposes.

21. PPM is a "debt collector" as that term is defined by 15 U.S.C. § 1692a(6) and Tex. Fin. Code § 392.001(6) and is a "third-party debt collector" as that term is defined by Tex. Fin. Code § 392.001(7).

22. Because PPM engages in "debt collection", PPM is therefore a "debt collector" as that term is defined by Cal. Civ. Code §1788.2(c).

23. As stated above, Paladino, according to filings with the California Secretary of State, is the sole member of PPM and the Chief Executive Officer.

24. During all times pertinent hereto, Paladino (a) created the collection policies and procedures used by PPM, and its respective employees and agents, in connection with their common efforts to collect consumer debts, (b) managed or otherwise controlled the daily collection operations of PPM, (c) oversaw the application of the collection policies and procedures used by PPM and its employees and agents, (d) drafted, created, approved and ratified the tactics and scripts used by PPM and its employees and agents to collect debts from consumers, including the tactics and scripts that were used to attempt to

collect an alleged debt from Plaintiff as alleged in this complaint, (e) ratified the unlawful debt collection practices and procedures used by PPM and its employees and agents in connection with their common efforts to collect consumer debts, and (f) had knowledge of, approved, participated in, ratified and benefitted financially from the unlawful debt collection practices used by PPM and its employees and agents in attempts to collect an alleged debt from Plaintiff as alleged in this complaint.

25. Paladino is a "debt collector" as that term is defined by 15 U.S.C. § 1692a(6) and Tex. Fin. Code § 392.001(6) and is a "third-party debt collector" as that term is defined by Tex. Fin. Code § 392.001(7).

26. During the one year prior to the date of the filing of this Complaint, PPM and/or representative(s), employee(s) and/or agent(s) of PPM made telephone calls to Plaintiff and his wife to collect the Account.

27. On June 28, 2023, PPM left a voicemail message for Plaintiff's wife which stated:

> Chantel Shotwell, Patrick calling with Private Courier Services. I have a scheduled service of summons here for, um, your husband, uh, Jeremy at 201 Glendale Church, or they got me going over to, uh, yeah, it looks like the address here 201 Glendale Church, right, um, I'm represented by Attorney County Deputy. Um, looks like, uh, due to Covid-19 protocol, I gotta give a notice of intent an hour or two before arrival. Uh, this would be Jeremy's legal opportunity to be heard in the matter outside of court. If he has any questions or concerns, I would advise he contacts the claimant's office immediately. 866-383-1417. If I don't receive a cease and desist order in the next hour or two, uh, please make sure, uh, that he does have two valid forms of ID upon service, whether it be at his home or job. Thank you and, uh, you've been notified.

28. PPM intended for this message to be conveyed to Plaintiff and further intended for the language that was used to cause Plaintiff to believe that he was being served a summons by law enforcement and that he may suffer the embarrassment of being served at his

4

place of employment and that if he did not immediately respond to this call he would be forfeiting his legal rights.

29. This communication was intended to scare Plaintiff into calling back to PPM for the purpose of making a payment.

30. Plaintiff's wife called back to the number left in the voicemail message and PPM threatened her that PPM would garnish her husband's wages, levy his bank account and even that her husband could go to jail if the account was not repaid.

31. The language used by PPM in the above-described phone call was chosen for the purpose of making Plaintiff believe that there was a pending legal action against her husband and that PPM had involuntary methods available to it to recover the amount owed on the Account and that Plaintiff had committed a crime and could face jail time for not repaying the Account.

32. This communication falsely threatened directly or impliedly that Plaintiff was being sued or had been sued on the Account and/or would be prosecuted for failure to repay it. This communication further misrepresented the nature of the debt in question as one of a court matter rather than a run-of-the-mill collection.

33. PPM intended for the statements made in this live call communication to be communicated to Plaintiff as well.

34. This communication was intended to scare Plaintiff into paying PPM on the Account.

35. The direct or implied threats to sue Plaintiff and/or that Plaintiff already had been sued and/or have Plaintiff served with a lawsuit and/or have Plaintiff arrested and sent to jail were false and misleading because at the time the statement was made PPM did not have the intention or authority to sue Plaintiff on the Account. There was no court proceeding

and there would be none. PPM did not have authority to use any involuntary collection methods.

36. Plaintiff spoke with PPM on the phone as well and PPM used demeaning and belittling language. In addition to the threats conveyed regarding serving him, suing him having him arrested and garnishing his wages, PPM also told him something very similar to "nice to know you're out there driving around a Harley and you can't even pay your bills." Plaintiff, does not own a Harley, but merely co-signed for a friend. Plaintiff is not riding a Harley around while not paying his bills as PPM suggested. This was humiliating for Plaintiff to hear this.

37. All of the communications between Plaintiff and PPM described above caused Plaintiff to believe that a lawsuit had been filed against him or imminently would be filed.

38. All of the communications between Plaintiff and PPM described above caused Plaintiff to believe that he would be prosecuted if the Account was not repaid.

39. All of the communications between Plaintiff and PPM described above caused Plaintiff to believe that PPM would use involuntary collection methods to recover the amount allegedly due on the Account if he did not voluntarily agree to repay it.

40. In one or more of the communications between Plaintiff and PPM, PPM failed to provide meaningful disclosure of their identity and failed to inform Plaintiff that the communication was with a debt collector or that PPM was attempting to collect a debt or that any information obtained would be used for the purpose of collecting a debt.

41. PPM's threats to sue Plaintiff if she did not immediately repay the Account overshadowed her right to dispute the Account and/or request validation of the Account.

42. PPM never provided Plaintiff notice of this rights to dispute or request validation of the debt in question.

43. PPM used the unregistered fictitious business name "CCS" in many of its dealings with Plaintiff.

44. However, on information and belief, the fictitious business name "CCS" is not registered with any government agency in New York or Texas as being an authorized fictitious business name of PPM.

45. All of the conduct by PPM described above was done knowingly and willfully.

46. PPM's purpose for the communications with Plaintiff described above was to attempt to collect the Accounts.

47. Each telephone call and each written correspondence individually conveyed information regarding the Account directly or indirectly to Plaintiff.

48. The telephone call(s) and written correspondence(s) each individually constituted a "communication" as defined by 15 U.S.C. § 1692a(2).

49. The only reason that PPM and/or representative(s), employee(s) and/or agent(s) of PPM made telephone call(s) to Plaintiff and her family members was to attempt to collect the Account.

50. The only reason that PPM and/or representative(s), employee(s) and/or agent(s) of PPM had telephone conversation(s) with Plaintiff and her family members was to attempt to collect the Account.

51. The only reason that PPM and/or representative(s), employee(s) and/or agent(s) of PPM left message(s) for Plaintiff and his family members was to attempt to collect the Account.

52. As a direct and proximate result of the aforesaid actions, Plaintiff suffered actual damages in the form of fear, anxiety, stress, mental anguish, depression and/or distraction from normal life, all or each of which manifested in physical form.

53. All of the conduct of PPM as described above was done without a surety bond on file with the Texas Secretary of State as required by Tex. Fin. Code §392.101.

54. During all times pertinent hereto, Paladino (a) created the collection policies and procedures used by PPM, and its employees and agents, in connection with their common efforts to collect consumer debts, (b) managed or otherwise controlled the daily collection operations of PPM, (c) oversaw the application of the collection policies and procedures used by PPM and its employees and agents, (d) drafted, created, approved and ratified the tactics and scripts used by PPM and its employees and agents to collect debts from consumers, including the tactics and scripts that were used to attempt to collect an alleged debt from Plaintiff as alleged in this complaint, (e) ratified the unlawful debt collection practices and procedures used by PPM and its employees and agents in connection with their common efforts to collect consumer debts, and (f) had knowledge of, approved, participated in, ratified and benefitted financially from the unlawful debt collection practices used by PPM and its employees and agents in attempts to collect an alleged debt from Plaintiff as alleged in this complaint.

55. Stone instructed those working for him to make calls to Texas on his behalf and on behalf of PPM for the purpose of making a profit from those calls.

## RESPONDEAT SUPERIOR

56. The representative(s) and/or collector(s) at PPM were employee(s) and/or agent(s) of PPM at all times mentioned herein.

57. The representative(s) and/or collector(s) at PPM were acting within the course and/or scope of their employment at all times mentioned herein.

58. The representative(s) and/or collector(s) at PPM were under the direct supervision and/or control of PPM at all times mentioned herein.

59. The actions of the representative(s) and/or collector(s) at PPM are imputed to their employer, PPM.

60. PPM acted at all times as an agent of Paladino.

61. The actions of PPM are imputed to Paladino.

62. Paladino was aware of the collection practices used by PPM.

## COUNT I:  VIOLATIONS OF 15 U.S.C. § 1692, et seq. BY PPM CAPITAL, INC.

63. The previous paragraphs are incorporated into this Count as if set forth in full.

64. The act(s) and omission(s) of PPM and its representative(s), employee(s) and/or agent(s) violated 15 U.S.C. § 1692(d)(2)&(6) and §1692e(2)&(3)&(4)&(5)&(7)&(8)&(10)&(11)&(14) and § 1692g.

65. Pursuant to 15 U.S.C. § 1692k Plaintiff seeks damages, reasonable attorney's fees and costs from PPM.

## COUNT II:  VIOLATIONS OF THE TEXAS FINANCE CODE BY PPM CAPITAL, INC.

66. The previous paragraphs are incorporated into this Count as if set forth in full.

67. The act(s) and omission(s) of PPM and its representative(s), employee(s) and/or agent(s) violated Tex. Fin. Code § 392.101 and 392.301(a)(2)&(5)&(6)&(7) and 392.302(1) and 392.304(a)(1)&(5)(A)&5(B)&(8)&(9)&(14)&(17)&(19).

68. Pursuant to Tex. Fin. Code § 392.403, Plaintiff seeks damages, reasonable attorney's fees and costs from PPM.

69. Pursuant to Tex. Fin. Code § 392.403, Plaintiff seeks an injunction against Defendant PPM enjoining it from future violations of the Texas Finance Code as described herein.

## COUNT III:  INVASION OF PRIVACY (INTRUSION ON SECLUSION) BY PPM CAPITAL, INC.

70. In the alternative, without waiving any of the other causes of action herein, without waiving any procedural, contractual, statutory, or common-law right, and incorporating all other allegations herein to the extent they are not inconsistent with the cause of action pled here, PPM is liable to Plaintiff for invading Plaintiff's privacy (intrusion on seclusion).   PPM intentionally intruded on Plaintiff's solitude, seclusion, or private affairs, and such intrusion would be highly offensive to a reasonable person.

71. Plaintiff suffered actual damages from PPM as a result of PPM's intrusion.

## COUNT IV:  VIOLATIONS OF THE FDCPA 15 U.S.C. § 1692, et seq. BY EUGENE PALADINO

72. The previous paragraphs are incorporated into this Count as if set forth in full.

73. By influencing and/or controlling the conduct of PPM, Paladino is liable for the act(s) and omission(s) of PPM and their representative(s), employee(s) and/or agent(s) for violations of 15 U.S.C. § 1692(d)(2)&(6) and §1692e(2)&(3)&(4)&(5)&(7)&(8)&(10)& (11)&(14) and § 1692g.

74. Pursuant to 15 U.S.C. § 1692k Plaintiff seeks damages, reasonable attorney's fees and costs from Paladino.

## COUNT V:  VIOLATIONS OF THE TEXAS FINANCE CODE BY EUGENE PALADINO

75. The previous paragraphs are incorporated into this Count as if set forth in full.

76. By influencing and/or controlling the conduct of PPM, Paladino is liable for the act(s) and omission(s) of PPM and their representative(s), employee(s) and/or agent(s) for violations of Tex. Fin. Code § 392.101 and 392.301(a)(2)&(5)&(6)&(7) and 392.302(1) and 392.304(a)(1)&(5)(A)&5(B)&(8)&(9)&(14)&(17)&(19).

77. Pursuant to Tex. Fin. Code § 392.403, Plaintiff seeks damages, reasonable attorney's fees and costs from Paladino.

78. Pursuant to Tex. Fin. Code § 392.403, Plaintiff seeks an injunction against Paladino enjoining him from future violations of the Texas Finance Code as described herein.

### COUNT VI:  INVASION OF PRIVACY (INTRUSION ON SECLUSION) BY EUGENE PALADINO

79. In the alternative, without waiving any of the other causes of action herein, without waiving any procedural, contractual, statutory, or common-law right, and incorporating all other allegations herein to the extent they are not inconsistent with the cause of action pled here, Paladino is liable to Plaintiff for colluding with PPM to invade Plaintiff's privacy (intrusion on seclusion).  Paladino intentionally caused the intrusion upon Plaintiff's solitude, seclusion, or private affairs, and such intrusion would be highly offensive to a reasonable person.

80. Plaintiff suffered actual damages from Paladino as a result of the intrusion on Plaintiff's privacy.

### EXEMPLARY DAMAGES

81. Exemplary damages should be awarded against PPM and Paladino because the harm with respect to which Plaintiffs seek recovery of exemplary damages resulted from malice (which means that there was a specific intent by PPM and Paladino to cause substantial injury or harm to Plaintiffs) and/or gross negligence (which means that the actions and/or

omissions of PPM and Paladino (i) when viewed objectively from the standpoint of PPM and Paladino at the time of the acts and/or omissions, those acts and/or omissions involved an extreme degree of risk, considering the probability and magnitude of potential harm to others and (ii) were such that PPM and Paladino had an actual, subjective awareness of the risk involved but nevertheless proceeded with conscious indifference to the rights, safety, or welfare of others).

## JURY TRIAL DEMAND

82. Plaintiff is entitled to and hereby demands a trial by jury.

## DEMAND FOR RELIEF

WHEREFORE, Plaintiff requests that the Court grant the following:

83. Judgment in favor of Plaintiff and against PPM Capital, Inc. as follows:

   a. Actual damages pursuant to 15 U.S.C. 1692k(a)(1);

   b. Statutory damages in the amount of $1,000.00 pursuant to 15 U.S.C. § 1692k(a)(2);

   c. Reasonable attorneys fees and costs pursuant to 15 U.S.C. § 1692k(a)(3);

   d. Statutory damages in the amount of $100 for each violation of Tex. Fin. Code §392.001, *et seq.*, pursuant to Tex. Fin. Code §392.403;

   e. Actual damages pursuant to Tex. Fin. Code § 392.403(a)(2);

   f. An injunction permanently enjoining PPM following trial of this cause from committing acts in violation of the Texas Finance Code as cited herein pursuant to Tex. Fin. Code § 392.403(a)(1);

   g. Reasonable attorneys fees and costs pursuant to Tex. Fin. Code § 392.403;

    h. Exemplary damages pursuant to the common law of Texas, see, e.g. *Waterfield Mortgage Co., Inc. v. Rodriguez*, 929 S.W.2d 641, 645 (Tex. App. 1996); and

    i. Such other and further relief as the Court deems just and proper.

84. Judgment in favor of Plaintiff and against Eugene Paladino as follows:

    a. Actual damages pursuant to 15 U.S.C. 1692k(a)(1);

    b. Statutory damages in the amount of $1,000.00 pursuant to 15 U.S.C. § 1692k(a)(2);

    c. Reasonable attorneys fees and costs pursuant to 15 U.S.C. § 1692k(a)(3);

    d. Statutory damages in the amount of $100 for each violation of Tex. Fin. Code §392.001, *et seq.*, pursuant to Tex. Fin. Code §392.403;

    e. Actual damages pursuant to Tex. Fin. Code § 392.403(a)(2);

    f. An injunction permanently enjoining Paladino following trial of this cause from committing acts in violation of the Texas Finance Code as cited herein pursuant to Tex. Fin. Code § 392.403(a)(1);

    g. Reasonable attorneys fees and costs pursuant to Tex. Fin. Code § 392.403;

    h. Exemplary damages pursuant to the common law of Texas, see, e.g. *Waterfield Mortgage Co., Inc. v. Rodriguez*, 929 S.W.2d 641, 645 (Tex. App. 1996); and

    i. Such other and further relief as the Court deems just and proper.

Respectfully submitted,

/s/ *Jeffrey D. Wood*
Jeffrey D. Wood, Esq.
ArkBN: 2006164
THE WOOD FIRM, PLLC
11610 Pleasant Ridge Rd.
Suite 103, Box 208
Little Rock, AR  72223
TEL:  682-651-7599
FAX:  888-598-9022
EMAIL:  jeff@jeffwoodlaw.com
Attorney for Plaintiff